IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDYCAR, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:16-cv-1274 |
| v. ) | |
| ) | |
| BOSTON GRAND PRIX, LLC, JOHN CASEY, ) | |
| and MARK PERRONE, ) | |
| ) | |
| Defendants. ) | |

### INDYCAR, LLC'S BRIEF IN SUPPORT OF MAINTAINING UNREDACTED COPIES OF COMPLAINT AND CERTAIN EXHIBITS THERETO UNDER SEAL

Pursuant to Southern District of Indiana Local Rule 5-11(d) and the confidentiality agreement previously executed by the parties,[1] Plaintiff INDYCAR, LLC ("INDYCAR") respectfully requests that the Court provisionally maintain the following documents under seal for a period of fourteen days after service of the instant Motion (as permitted by Local Rule 5-11(d)(3)): Exhibit A to its Complaint, titled "INDYCAR Series 2016-2020 Event Agreement— Street Course" (the "Event Agreement"); Exhibit B, titled "INDYCAR Series 2016-2020 Event Agreement – Street Course – PERSONAL GUARANTY"; and INDYCAR'S Complaint and Exhibits C and D thereto (because all of these documents quote Exhibits and B to some extent). Contemporaneously, INDYCAR moves to permanently seal specifically designated portions of the Complaint, as well as certain portions of Exhibits A, C, and D to the extent they contain

---

[1] On May 18, 2015, INDYCAR and Defendant Boston Grand Prix, LLC ("BGP") entered into an Event Agreement for the purposes of promoting INDYCAR's planned race event in Boston, Massachusetts for 2016 and through 2020. The Event Agreement contains an express confidentiality provision requiring INDYCAR and Defendants to treat all terms and conditions of the Event Agreement as confidential ("Confidential Provision"). *See* Event Agreement, ¶ 12.1.

INDYCAR's trade secrets and sensitive commercial information that is confidential and proprietary under the Seventh Circuit law.[2]

## LEGAL STANDARD

Although documents that "influence or underpin" a judicial decision are presumptively open to public inspection, *Bond v. Kalven*, 585 F.3d 1061, 1075 (7th Cir. 2009) (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002), Southern District of Indiana Local Rule 5-11 provides that the Court may enter an order keeping certain information under seal when there is adequate cause shown to do so. *See also Union Oil Co. of California v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) ("Both litigants and judges may protect properly confidential matters by using sealed appendices to briefs and opinions.").

Trade secret law "does not exhaust legitimate interests in confidentiality," but is a category of information often and properly sealed from public access. *Baxter Int'l,* 297 F.3d at 547 (citations omitted); *Pepsico, Inc. v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995); *Bodemer v. Swanel Bev.*, 884 F. Supp. 2d 717, 739-40 (N.D. Ind. 2012) (granting motion to seal where trade secrets, such as those involving pricing, may be involved). As such, good cause exists to seal documents when they contain information that would cause undue private or public harm if disclosed. *SmithKline Beecham Corp. v. Pentech Pharm., Inc.*, 261 F. Supp. 2d 1002, 1008 (N.D. Ill. 2003). Narrow and specific requests to seal – like those presented here – may be granted where reasonable concerns for confidentiality are articulated. *See KM Enter., Inc. v. Global Traffic Techs., Inc.* 725 F.3d 718, 734 (7th Cir. 2013) (granting motion to seal documents containing sensitive, confidential pricing and customer information).

---

[2] Attached to INDYCAR's Motion to Seal as **Exhibit 1** are the proposed public versions of the Complaint, as well as Exhibits A, C, and D, with the information that INDYCAR asks the Court to permanently maintain under seal redacted. Due to INDYCAR's confidentiality obligations under the prior agreement with Defendants, INDYCAR is filing Exhibit 1 under seal pending expiration of the 14-day period, at which time, absent the Court's order to the contrary, Exhibit 1 shall become the public version of INDYCAR's filing.

# ARGUMENT

### A. Exhibits A and B should be Provisionally Sealed Pursuant to the Confidentiality Provision of the Event Agreement.

Because Exhibits A and B were previously designated as confidential under Section 12.1 of the Event Agreement, this Court should provisionally seal Exhibits A and B, as well as the the Complaint and Exhibits C and D thereto (to the extent they reference Exhibits A and B) for fourteen (14) days pursuant to Local Rule 5-11(d)(3). Except as expressly specified below, INDYCAR does not object to unsealing these Exhibits at the expiration of the fourteen-day period, unless Defendants demonstrate why the portions should continue to remain under seal.[3]

### B. Portions of INDYCAR's Complaint and Exhibits A, C, and D Constitute INDYCAR's Trade Secrets and Should Remain Sealed to Prevent Significant Economic Harm to INDYCAR.

Portions of the Complaint and of Exhibits A, C and D thereto contain information that comprise two categories of INDYCAR's confidential and trade secret information and must therefore remain sealed. First, the documents contain specific references to the financial terms (e.g., pricing information and financial or even non-monetary consideration exchanged between the parties) of the Event Agreement between INDYCAR and Defendant Boston Grand Prix, LLC ("BGP"). Second, the documents contain an effective "road map" identifying how to market and stage an INDYCAR event with event-specific information relating to the Boston Grand Prix Race. The disclosure of any of this information would cause significant economic harm to INDYCAR

#### 1. Information Regarding the Financial Terms of the Event Agreement Should Permanently Remain Under Seal.

The Event Agreement sets forth in great detail the financial commitments that INDYCAR

---

[3] INDYCAR expressly reserves the right to challenge any attempt by Defendants to maintain the confidentiality of these documents.

and BGP made to each other in entering into a contractual relationship designed to facilitate staging the Boston Race. Specifically, this information reveals the pricing arrangement reached between the parties to the Event Agreement, showing not only the specific amounts of the sanction payments that BGP agreed to pay to INDYCAR, but also other financial information (such as the amount of insurance coverage that BGP was required to obtain, cost sharing between the parties for obtaining INDYCAR credentials, and other information, including non-monetary consideration exchanged between the parties relating to track credentials) that played a direct role in determining the ultimate amount of the sanction fees that BGP was required to pay to INDYCAR. All of this information is confidential and proprietary to INDYCAR, and its disclosure would have a serious detrimental impact on INDYCAR's ability to negotiate the financial terms of agreements with other promoters at race tracks around the world.

It is well established that "pricing information may constitute a protectable trade secret." *KnowledgeAZ, Inc. v. Jim Walter Res., Inc.*, 2006 WL 3201932, at *2 (S.D. Ind. June 28, 2006); *see also Hal Wagner Studios, Inc. v. Elliott*, 2009 WL 854676, at *4 (S.D. Ill. 2009) (sealing documents that explained party's pricing architecture, which "obviously constitute[d] confidential commercial information, and in most cases probably involve trade secrets as well"). Where – as here – a party has taken steps to maintain the secrecy of its trade secret pricing information, and harm would result if the information were made public, there is "good cause for maintaining this confidential pricing/cost information under seal." *See Knowledge AZ, Inc.*, 2006 WL 3201932, at *2 (finding good cause and holding defendant's pricing information remain under seal because the defendant took reasonable steps to maintain its secrecy and had established that the defendant would be harmed if the information were disclosed).

INDYCAR negotiates event agreements on an individual, case by case basis with its

promoters for each race event. Affidavit of Gretchen Snelling ("Snelling Aff."), ¶ 4 (a true and accurate copy of which is attached to the Motion to Seal as **Exhibit 2**). The terms of each contract are tailored to the race and to the promoter. *Id.* at ¶ 6. This is because there are several areas that must be individually addressed based on the location, type of race, and parties to the contract. *Id.* Accordingly, INDYCAR's pricing associated with any particular event agreement is based on the specific contract terms agreed upon by the parties. *Id.*

Given that the terms of each event agreement vary, the pricing arrangement associated with each contract is confidential to the parties to the agreement *Id.* at ¶ 7. INDYCAR requires its employees to maintain the confidentiality of its proprietary information. *Id.* INDYCAR also contractually requires its promoters not to divulge its proprietary information. *Id.* at ¶ 8. For example, Section 12.1 of the Event Agreement between INDYCAR and BGP requires that the parties agree to maintain all terms of the Event Agreement as confidential. *See* Event Agreement, § 12.1; Snelling Aff., ¶ 8. Additionally, in prior litigation INDYCAR has routinely filed its pricing and financial information under seal or produced it under a protective order. *Id.*, ¶ 9. These steps are not only reasonable, but are necessary to protect INDYCAR'S financial interests. If this information were disclosed to the public, it would significantly harm INDYCAR'S ability to negotiate agreements with other promoters or sponsors - an essential component of INDYCAR'S business. *See id.* at ¶¶ 13-14. Public disclosure would give potential business partners an unearned negotiating advantage. *See SmithKline*, 261 F. Supp. 2d at 1008; *see also* Snelling Aff., ¶¶ 13-14. As a result of INDYCAR'S efforts to keep the pricing and contract information confidential, the information related to the Event Agreement between INDYCAR and BGP should not be readily available to the public or competitors through legitimate means, and its confidentiality provides independent economic value in negotiating such agreements. *See*

5

Snelling Aff., ¶¶ 10, 13.

Because INDYCAR's pricing and other confidential financial information associated with the Event Agreement constitute a trade secret, INDYCAR respectfully requests that the following designated portions of the Complaint and Exhibits A, C and D (referencing such financial information) be maintained under seal:

- **INDYCAR's Complaint**: Paragraphs 20, 24, 25, 27, 28, and 32.

- **Exhibit A, Event Agreement:** The following portions of Exhibit A referencing pricing or financial information have been redacted, and the unredacted versions should remain under seal: Sections 3.2 (Term), 3.3 (Other Events), 4.3 (Sanction Fee), 4.5 (Starting Field), 4.6 (Total INDYCAR Events), 5.2 (Payment), 5.2.1 (2016 Event Security), 5.3 (Time is of the Essence), 5.5. (Taxes), 9.7 (Insurance), and 9.7.3 (Participant Accident Coverage).

- **Exhibit C, May 5, 2016 Letter from Miles to Casey:** Exhibit C contains language identifying damages INDYCAR is entitled to under the Event Agreement as a result of BGP's breach. The redacted financial information contained in this letter is a confidential trade secret and should be maintained under seal. Snelling Aff., ¶ 15.

- **Exhibit D, May 10, 2016 letter from Miles to Casey:** Exhibit D is a letter from Mark Miles, Chief Executive Officer of INDYCAR, to BGP and Casey that directly quotes a portion of Section 7 of the Event Agreement that INDYCAR is moving to maintain under seal. In this letter, INDYCAR also reiterated its demand for payment of the amounts due INDYCAR from BGP and personally guaranteed by Casey. The redacted financial information contained in this letter is a confidential trade secret and should be maintained under seal. *See id*.

These sections of the Event Agreement and its Exhibits provide confidential and trade secret pricing and financial information, including specific fees and other consideration

exchanged between the contracting parties. Sections 3.2, 4.3, 5.2 and 5.3 express the specific payment amounts that BGP agreed to pay to INDYCAR, the manner of ensuring same and set forth particular payments to be made and procedures to be followed in the event of default or early termination. Sections 3.3, 4.5 and 4.6 set forth financial and event detail related commitments. Section 5.5 describes which party is financially responsible for various types of taxes. In addition, this section also details how taxes will be paid and the penalties for failure to pay. Section 9.7 describes the types and amounts of insurance that each party was required to procure under the contract. These limited portions of the Event Agreement reveal INDYCAR's trade secret pricing and financial information and should be maintained under seal. *See* Snelling Aff., ¶ 15.

Moreover, each of these documents contains INDYCAR's confidential, sensitive, trade secret pricing and financial information, the disclosure of which would seriously harm INDYCAR's business and ability to negotiate future agreements with promoters. *See* Snelling Aff., ¶¶ 13-15. INDYCAR has taken reasonable steps to maintain the secrecy of the information, and as a result, this pricing and financial information is not generally known. *See id.* at ¶¶ 7-10. Furthermore, the pricing information derives independent economic value from not being generally known and therefore constitutes a protectable trade secret that should remain under seal. *See KnowledgeAZ*, 2006 WL 3201932, at *2.

### 2. Other Contract Terms in the Event Agreement Revealing How to Market and Plan an INDYCAR Event Should Remain Sealed.

In addition to sensitive financial and pricing information, the Event Agreement between INDYCAR and BGP also includes detailed information that effectively provides a road map outlining how an INDYCAR race event is marketed and executed. Similar to pricing information, contract terms that have economic value and are not generally known in the

7

industry may qualify as a trade secret. *See SmithKline*, 261 F. Supp. 2d at 1008 (holding that information about terms and conditions of contracts that might give others an unfair competitive advantage is legitimately confidential information that competitors should not have and the public does not need to know to evaluate the judiciary's handling of the litigation); *Metavante Corp. v. Emigrant Sav. Bank*, 2008 WL 4722336, *10 (granting motion to seal as to documents containing trade secrets including specific methods, techniques and processes used by the parties and nonpublic business plans and strategies). Marketing strategies and plans have been maintained under seal as well. *Formax, Inc. v. Alkar-RapidPak-MP Equip., Inc.*, 2013 WL 2452703, at *1-2 (E.D. Wis. June 5, 2013) (allowing documents containing confidential information concerning marketing strategies, and research and development expenditures to be redacted/filed under seal). Maintaining the secrecy of such information is necessary when disclosure would afford others "an unearned competitive advantage – unearned because the issue of public disclosure arises from the adventitious circumstance of the [document]'s having become caught up in litigation and as a result having become filed in court." *SmithKline*, 261 F. Supp. 2d at 1008. Because public disclosure of INDYCAR's confidential marketing strategies and event planning steps contained in the Event Agreement would damage not only INDYCAR's negotiations with potential future promoters and sponsors (as well as several currently-ongoing negotiations), but also INDYCAR's position in the competitive automobile racing industry, INDYCAR respectfully requests that the following portions of the Event Agreement (Exhibit A) be maintained under seal as well:

- **Section 7 (comprising subsections 7.1- 7.4):** This section contains proprietary marketing and promotional plans and outlines the rights of each party to commercially exploit the event. These sections reveal various aspects of the marketing approach that INDYCAR and

8

promoters may utilize to promote an event. Significantly, the disclosure of any portion of this information could have a detrimental economic effect on INDYCAR'S ongoing and future negotiations with promoters and sponsors. *See* Snelling Aff., ¶¶ 16-19.

- **Sections 8.1-8.7:** This portion of the Event Agreement delineates the rights and obligations of the parties with respect to the use of each other's intellectual property. The intellectual property involved here are highly commercial protectable interests, and the terms granting the parties rights to use this property is equally commercial and protectable. INDYCAR negotiates agreements relating to the use of its intellectual property on a case by case basis, and its public disclosure in this instance could easily impact ongoing or future negotiations with other promoters or sponsors.

- **Sections 9.2.2, 9.4, 10 and Event Agreement Exhibit B:** These sections also reveal various aspects of the marketing approach that INDYCAR and promoters may utilize to promote an event, and essentially lay out the plan for conducting an INDYCAR event in detail. In the hands of a potential promoter or an INDYCAR competitor, these terms would provide a rad map detailing every aspect of INDYCAR's event preparation and staging, and could have a detrimental economic effect on INDYCAR'S ongoing and future negotiations with promoters and sponsors. *See* Snelling Aff., ¶¶ 16-19.

Each of these portions of the Event Agreement contains confidential trade secret information and should remain under seal. INDYCAR takes the same steps to keep these contract terms confidential as it does for financial and pricing information. *See* Snelling Aff., ¶¶ 7-9, 18. Through INDYCAR'S efforts to maintain secrecy of these contract terms, this information is not ascertainable by legitimate means to the public or competitors. *Id*. at ¶ 10. Furthermore, if the information outlined above were disclosed to a competitor, sponsor or other

promoter, that party would have a significant negotiating and economic advantage over INDYCAR simply because the information was disclosed through ongoing litigation. *Id*. at ¶¶ 19-20; *see also SmithKline*, 261 F.Supp.2d at 1008.

As the information reflected in the specific terms of the Event Agreement listed above derives an independent economic value from not being known or readily ascertainable to the public or competitors (due to INDYCAR'S reasonable efforts to maintain its confidentiality), these terms are protectable trade secrets and should also remain sealed. No less restrictive alternative to sealing will afford INDYCAR adequate protection.

## CONCLUSION

As described in depth above, there is good cause to keep sealed the designated portions of INDYCAR's Complaint and Exhibits A, C, and D thereto because these documents contain INDYCAR's confidential, proprietary trade secret information. Accordingly, INDYCAR respectfully requests that the Court maintain unredacted versions of the Complaint and of Exhibits A, C, and D thereto under seal.[4]

---

[4] Due to the timing of the filing of the Motion to Seal (contemporaneously with the filing of the Complaint), INDYCAR has not contacted Defendant prior to the filing of this motion to inquire as to whether BGP objects to this Motion. Based on the parties' promise to maintain the confidentiality of the specific terms of the Event Agreement, however, INDYCAR believes that BGP would not object to provisional sealing of the Event Agreement at a minimum in order to allow BGP time to respond.

        Respectfully submitted,

        ICE MILLER LLP


        */s/ Angela Krahulik*
        Angela P. Krahulik, Attorney No. 23036-49
        Elizabeth Timme, Attorney No. 29306-53
        Olga Voinarevich, Attorney No. 32188-45

        *Counsel for Plaintiff INDYCAR, LLC*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, Indiana 46282-0200
(317) 236-2100
angela.krahulik@icemiller.com
elizabeth.timme@icemiller.com
olga.voinarevich@icemiller.com


I\10350221.4