UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDYCAR LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:16-cv-01274-TWP-MJD |
| ) | |
| JOHN CASEY, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Asking the Court to display the red flag in this matter before the checkered can be waived, Defendant John Casey has filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(7) to dismiss or stay this action brought by Plaintiff INDYCAR, LLC ("INDYCAR"). [Dkt. 49.]  For the following reasons, the Magistrate Judge recommends that the Court **DENY** Casey's Motion.

**I. Background**[1]

This matter arises out of a failed attempt to run a Verizon IndyCar Series[2] race on the streets of Boston.  [Dkt. 35-1 at 4 (¶¶ 23–25).]  In May 2015, INDYCAR and nonparty Boston Grand Prix, LLC ("Boston GP") joined forces to turn Labor Day Weekend 2016 into a veritable festival of speed.  [Dkt. 35-1 at 2 (¶ 10).]  The two reached an agreement for Boston GP to

---

[1] "For purposes of a motion to dismiss for failure to join a party under Rule 19, we accept the allegations in the complaint as true."  *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 (7th Cir. 2001).  Except where necessary, the Court cites to the publicly-filed versions of the relevant documents, including the redacted Amended Complaint and attachments at Docket Numbers 35-1 through 35-5.

[2] Note the distinction between INDYCAR, LLC and the Verizon IndyCar Series.  The former is the plaintiff in this matter, [*see* Dkt. 35-1], and the sanctioning body of the latter, [*see* Dkt. 34-2 at 35; Dkt. 35-2 at 2].

1

promote an annual grand prix in the City of Boston from 2016 through 2020 (the "Event Agreement"). [Dkt. 35-1 at 2 (¶ 10).][3] Sometime between May 2015 and April 2016 the relationship between Boston GP and the City of Boston ran into a chicane,[4] which slowed Boston GP's progress. [Dkt. 35-1 at 4 (¶ 23).] Still, Boston GP reassured INDYCAR that it had resolved any issues and that the race would go forward as scheduled. [Dkt. 35-1 at 4 (¶ 23).] On April 29, 2016, however, the plans for the grand prix were sent careening into the wall: Boston GP announced that the green flag would never fly above the City on a Hill and canceled the grand prix altogether. [Dkt. 35-1 at 4 (¶ 23).] This announcement left INDYCAR without a race and left Boston GP with outstanding unpaid sanctioning fees. [Dkt. 35-1 at 5 (¶ 26).]

In May 2016, INDYCAR brought the instant suit against Casey; Boston GP; and Mark Perrone, manager of Boston GP, seeking to recover contractual damages from the demise of the grand prix. [Dkt. 51.] In July 2016, INDYCAR voluntarily dismissed Boston GP and Perrone, leaving Casey as the lone defendant. [Dkt. 26; Dkt. 32.] Boston GP is currently in bankruptcy proceedings. [*See* Dkt. 50 at 1; Dkt. 56 at 3.]

On August 10, 2016, INDYCAR filed the currently-operative First Amended Complaint against Casey, attaching a document entitled "PERSONAL GUARANTY" (the "Guaranty"), signed by Casey and Mark Miles, President and CEO of INDYCAR.[5] [Dkt. 35-2.] INDYCAR required Casey to sign the Guaranty as a condition to entering into the Event Agreement with

---

[3] The Event Agreement is attached to INDYCAR's Amended Complaint and is central to INDYCAR's claims. Accordingly, the agreement is properly considered by the Court. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

[4] A chicane is "an obstacle on a racecourse" or "a series of tight turns in opposite directions in an otherwise straight stretch of a road-racing course." *Chicane*, Merriam-Webster, http://www.merriam-webster.com/dictionary/chicane.

[5] The Guaranty is attached to INDYCAR's Amended Complaint and is central to INDYCAR's claims. Accordingly, the agreement is properly considered by the Court. *Wright*, 29 F.3d at 1248.

2

Boston GP. [Dkt. 35-1 at 2.] The Guaranty provided that Casey undertook various responsibilities, including:

- "absolutely and unconditionally guarantee[ing] the full and prompt payment and performance when due" of sanctioning fees for the 2016 and 2017 events, costs, and expenses, [Dkt. 35-2 at 1];

- permitting INDYCAR to "maintain an action on this Guaranty, regardless of whether: (a) [Boston GP] is joined in such action; or (b) a separate action is brought against [Boston GP]," [Dkt. 35-2 at 2];

- remaining liable "[n]otwithstanding the dissolution or termination of [Boston GP] or any other party" and regardless of the unavailability of Boston GP or any "failure by INDYCAR to file or enforce a claim against the estate . . . . of [Boston GP]," [Dkt. 35-2 at 2];

- and waiving certain enumerated defenses and, more generally, "all defenses given to sureties or guarantors at law or in equity, other than the actual payment and performance of the Obligations and based upon questions as to the validity, legality, or enforceability of the Obligations," [Dkt. 35-2 at 1].

INDYCAR alleges that, despite making multiple demands, Casey has failed to adhere to his obligations under the Guaranty and therefore owes INDYCAR a sum of money. [*See* Dkt. 35-1 at 5 (¶¶ 26–30).] INDYCAR further alleges that Casey falsely represented his financial capacity to induce INDYCAR to enter into the Guaranty and the Event Agreement with Boston GP. [Dkt. 35-1 at 7-8 (¶¶ 38–44).]

On August 24, 2016, Casey filed a motion to dismiss or stay the instant suit for failure to join Boston GP as a necessary party under Federal Rules of Civil Procedure 12(b)(7) and 19, [Dkt. 49], which Motion is presently pending before the Court.

## II.  Legal Standards

This action invokes the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.  The Federal Rules of Civil Procedure therefore govern the standard under which Casey's Motion is evaluated while Indiana law governs the construction of the relevant contracts, pursuant to the agreements' choice of law clauses.  [Dkt. 35-2 at 3; Dkt. 35-3 at 43]; *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1937); *Hahn v. Walsh*, 762 F.3d 617, 629 (7th Cir. 2014) ("Stated in the broadest of strokes, the *Erie* doctrine provides that 'federal courts sitting in diversity apply state substantive law and federal procedural law.'" (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).

### A.  Federal Rules of Civil Procedure 12(b)(7) & 19

A motion pursuant to Rule 12(b)(7) seeks to dismiss a claim for failure to join a required party.  Rule 19(a)(1) sets out how to determine whether a nonparty is a required party:

> (1) **Required Party.** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

4

Fed. R. Civ. P. 19(a)(1); *see Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001). If no Rule 19(a)(1) criterion is met, the nonparty is not a required party and the motion to dismiss must be denied.

However, if a nonparty meets a Rule 19(a)(1) criterion and joinder is not feasible, the Court must "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed" under Rule 19(b). Fed. R. Civ. P. 19(b). The Court considers several factors, including possible prejudice to the parties or nonparties, the ability of the Court to fashion a remedy to limit any prejudice, the adequacy of a possible judgment without the nonparty, and the adequacy of the plaintiff's remedy if the action were dismissed. *Id.*

"The purpose of Rule 19 is to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Askew v. Sheriff of Cook Cty., Ill.*, 568 F.3d 632, 634 (7th Cir. 2009) (internal quotation omitted). It is the defendant's burden to show that the plaintiff has failed to join a required party, *see Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, No. 1:04-cv-00562-JDT-WTL, 2006 WL 3305122, at *5 (S.D. Ind. Aug. 16, 2006) (Tinder, J.), and federal courts must carefully scrutinize motions to dismiss under Rule 12(b)(7) because "[d]ismissal . . . is not the preferred outcome under the Rules," *Askew*, 568 F.3d at 634. For example, a nonparty does not become a "required party" under Rule 19 merely because it has a "strong interest . . . in the litigation," *Thomas v. United States*, 189 F.3d 662, 668 (7th Cir. 1999), nor because it "may need to indemnify [a party to the litigation] in the future," *Askew*, 468 F.3d at 637. Rather, the Court must hew to the Rule 19 two-part test and determine, first, if joinder of the nonparty is required under Rule 19(a)(1) and,

second, if the nonparty is required, whether the action should nonetheless proceed despite the nonparty's absence under Rule 19(b). *See Askew*, 468 F.3d at 634–36.

### B. Indiana Law on Guaranties

Indiana law provides that guaranties are subject to general contract law.[6] *Kruse v. Nat'l Bank of Indianapolis*, 815 N.E.2d 137, 144 (Ind. Ct. App. 2004) (Vaidik, J.). When interpreting a guaranty, the Court must "give effect to the intentions of the parties, which are to be ascertained from the language of the contract in light of the surrounding circumstances." *Id.* Such language "should neither be so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within their terms." *Id.* at 145. All "writings executed at the same time and relating to the same transaction or subject matter" should be considered together in determining the parties' intent. *Id.*

Indiana law divides guaranties into several categories, including, as relevant here, absolute/unconditional and conditional. *Id.* at 141 n.2; *McEntire v. Indiana Nat'l Bank*, 471 N.E.2d 1216, 1224 (Ind. Ct. App. 1984). In the Indiana courts' most thorough exegesis of the subject, the Court of Appeals of Indiana described an absolute guaranty as

> an unconditional undertaking on the part of the guarantor that the person primarily obligated will make payment or will perform, and such a guarantor is liable immediately upon default of the principal without notice. . . . An absolute guaranty, unlike a conditional one, casts no duty upon the creditor or holder of the obligation to attempt collection from the principal debtor before looking to the guarantor.

*Kruse*, 815 N.E.2d at 141 n.2 (alteration in original) (quoting *McEntire*, 471 N.E.2d. at 1225). Upon default, the absolute guarantor "becomes primarily liable on the debt," *In re Kraft, LLC*, 429 B.R. 637, 661 (Bankr. N.D. Ind. 2010) (citing *McEntire*, 471 N.E.2d at 1223), "notwithstanding the occurrence or nonoccurrence of any event either within or not within the

---

[6] As noted above, the Guaranty provides that it is to be interpreted under Indiana law. [Dkt. 35-2 at 3.]

6

contemplation of the parties at the time the guaranty is executed," *Kruse*, 815 N.E.2d at 141 n.2 (internal quotation omitted). An absolute guaranty is generally characterized by clear language indicating that the guaranty is "absolute" or "unconditional." *See id.* at 146 (determining that guarantor was an absolute guarantor where he "absolutely and unconditionally guarantee[d]" payment); *Modern Photo Offset Supply v. Woodfield Grp.*, 663 N.E.2d 547, 550 (Ind. Ct. App. 1996) (same).

### III. Discussion

Casey argues that Boston GP is a required party under each of the Rule 19(a) criteria, that the Rule 19(b) factors favor dismissal, and that, as an alternative to dismissal, the Court should stay proceedings whilst Boston GP's bankruptcy remains pending. The Court addresses each contention in turn.

#### A. Rule 19(a)

As detailed above, to determine whether a nonparty is a required party under Rule 19, the Court must consider (1) whether the Court may accord "complete relief among existing parties" without joinder, (2) whether the suit may "impair or impede" the nonparty's ability to protect its own interests in the subject matter of the suit, and (3) whether there is a "substantial risk" that a party may incur multiple or inconsistent obligations absent the nonparty. Fed. R. Civ. P. 19(a)(1); *see Davis Cos.*, 268 F.3d at 481. Casey asserts that each criterion is met in this case. The Court addresses the first and third criteria in turn.[7]

---

[7] The second criterion, Rule 19(a)(1)(B)(ii), "requires a substantial risk of **double liability**." *Morgan Guar. Trust Co. of New York v. Martin*, 466 F.2d 593, 598 (7th Cir. 1972) (emphasis altered). Casey does not explain to whom besides INDYCAR he may be liable as a result of a decision on the merits in this case. To the extent Casey's arguments addressed to that criterion are applicable to the other criteria, the Court addresses the arguments herein.

7

1. **Complete Relief**

First, regarding the Court's ability to "accord complete relief among existing parties," Fed. R. Civ. P. 19(a)(1)(A), Casey argues that the Court is not able to find that Casey owes INDYCAR unpaid sanction fees in Boston GP's absence. In essence, Casey asks the Court to conclude that proof of a lack of a prior material breach by INDYCAR is a precondition to bringing suit on the Guaranty. According to Casey, a determination of prior material breach could only be made with Boston GP's participation. INDYCAR maintains that Casey's obligation to pay under the Guaranty is triggered solely by Boston GP's nonpayment of the sanctioning fees as set out in the Event Agreement.

Casey's interpretation of the Guaranty is counter to law and the text of the relevant agreements. The presence of a prior material breach is generally an affirmative defense, to be asserted by the defendant—as demonstrated by the case relied upon by Casey for the proposition that a material breach excuses performance by the nonbreaching party. *See Innovative Piledriving Prod., LLC v. Unisto Oy*, No. 1:04-CV-453-TS, 2006 WL 1843498, at *6 (N.D. Ind. June 30, 2006) ("Accordingly, a jury will determine whether the Defendants were justified in terminating the contract for the Plaintiffs' purported breaches . . . ."); *see also, e.g., Norwood Promotional Prod., LLC v. KustomKoozies, LLC*, 835 F. Supp. 2d 685, 704 (S.D. Ind. 2011) ("To the extent the Court understands the defense being raised, the Court's determination that Kustom was the first to breach either agreement negates a defense based on a prior material breach."). The language of the Guaranty also evinces the absence of such a precondition: Casey unconditionally guaranteed "the full and prompt payment and performance" of the Sanction Fee as described in Sections 4.3 and 5.2 of the Event Agreement, [Dkt. 35-2 at 1; Dkt. 34-2 at 5-6], subject to the possibility of early payment of the 2016 and 2017 fees if the Guaranty "does not

terminate in accordance with its terms prior to December 31, 2016," [Dkt. 35-2 at 1].[8] Casey's independent, primary liability under the Guaranty is precisely the type of liability contemplated by an unconditional guaranty under Indiana law. *See Kruse*, 815 N.E.2d at 142 ("An absolute guaranty . . . casts no duty upon the creditor or holder of the obligation to attempt collection from the principal debtor before looking to the guarantor."). Accordingly, there is no need for the plaintiff to affirmatively demonstrate a lack of prior material breach in this lawsuit.

So understood, Casey's remaining argument is that Casey is unable to raise various defenses in the absence of Boston GP.[9] But Casey's bald assertion that he "lacks standing to assert Boston Grand Prix's defenses to Plaintiff's allegations" is unavailing.[10] [Dkt. 50 at 6.]

---

[8] Section 3.2 of the Event Agreement, upon which Casey relies, is an early termination clause which, by its own terms, applies only to INDYCAR and Boston GP as the promoter. [*See* Dkt. 34-2 at 4 ("If termination and/or a material breach of this Agreement by Promoter occurs that results in cancellation of the 2016 Event, Promoter shall pay to INDYCAR, as an early termination payment, the Sanction Fees for the 2016 and 2017 Events.").]

[9] This particular argument is likely better addressed to the Rule 19(b) factor of prejudice. *See* Fed. R. Civ. P. 19(b)(1) (requiring the court to consider "the extent to which a judgment rendered in the person's absence might prejudice . . . the existing parties"). The Court nonetheless addresses Casey's argument on its own terms in this section and further incorporates this discussion in its discussion of Rule 19(b), *infra*.

[10] In the same sentence, Casey argues that he is unable to assert "Boston Grand Prix's counterclaims for tortious interference against Plaintiff," but Casey does not explain how his inability to assert Boston GP's counterclaim is relevant to any of the Rule 19(a) criteria. [Dkt. 50 at 6.]

The lone case to which Casey cites at the end of the relevant paragraph, *Deere v. American Water Works Co., Inc.*, No. 1:14-cv-1077-WTL-MJD, 2015 WL 1397086 (S.D. Ind. Mar. 26, 2015), is plainly inapposite. [*See* Dkt. 50 at 7.] *Deere* involved allegations that one company committed tortious acts **through a subsidiary company**—not as a result of any guaranty—and the court held that the subsidiary company was a required party. 2015 WL 1397086, at *2. That unique relationship is not present here.

In fact, Indiana law clearly contemplates guarantors raising defenses and the potential for broad waiver of those defenses. The Court of Appeals in Kruse, for example, considered the guarantor's defense of failure to mitigate damages and noted that the guarantor likely waived the defense. *Kruse*, 815 N.E.2d at 150–51; *see, e.g.*, *Houin v. Bremen State Bank*, 495 N.E.2d 753, 759 (Ind. Ct. App. 1986) (noting that guarantor had raised "affirmative defenses"); *see also Chrysler Credit Corp. v. Marino*, 63 F.3d 574, 579 (7th Cir. 1995) (concluding, under Illinois law, that guarantor's "counterclaims" were merely an attempt to assert waived defenses).

Indeed, Casey argues that INDYCAR's prior material breach would excuse Boston GP's performance, which would in turn avoid triggering Casey's guaranty of performance. Such a defense would in fact belong to Casey under the Guaranty, except to the extent the defense may be contractually waived. [*See* Dkt. 35-2 at 1.] Casey fails to establish that Boston GP's nonjoinder in any way impacts his ability to raise such a defense, *see, e.g.*, *Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*, 140 B.R. 56, 61 (S.D.N.Y. 1992) ("[The guarantors] have alleged no facts to buttress their assertion that somehow they need Namrod's joinder to conduct their defense."), and, most importantly, Casey "prospectively agreed" in the Guaranty to the possibility of litigating against INDYCAR in Boston GP's absence, *Kruse*, 815 N.E.2d at 145; [Dkt. 35-2 at 1-2]; *cf. Gen. Elec. Bus. Fin. Servs., Inc. v. Silverman*, No. 09C0364, 2009 WL 2371536 (N.D. Ill. July 30, 2009) ("[T]he purpose of the guaranty [is] to provide . . . a simple means of compelling payment of the debt against the individual guarantors."). The Court declines to simply assume that Casey will be forced to "litigate with his hands tied behind his back," as Casey insists. [Dkt. 50 at 6].[11]

---

[11] Given the Court's determination that INDYCAR's rights to sue on the Guaranty are triggered by the nonpayment of sanctioning fees by Boston GP and that Casey is not **procedurally** barred from raising defenses to performance under the Guaranty, the Court also rejects Casey's bald and conclusory arguments that the Court would be issuing a "prohibited advisory opinion" by reaching the merits of INDYCAR's action, [Dkt. 50 at 6]; that a decision on the merits would somehow violate Casey's "constitutional due process rights," [Dkt. 57 at 1]; and that INDYCAR "cannot contract around the Federal Rules of Civil Procedure," [*Id.* at 20]. With regard to the first of these arguments, the authorities to which Casey cites are inapposite. In one of the opinions to which Casey cites, the appellants sought the return of property without joining its owner. *See Holloway v. United States*, 789 F.2d 1372, 1374 (9th Cir. 1986). In the other two cases, the plaintiffs sought to toll the statute of limitations as to nonparties. *See* Holloway v. United States, 789 F.2d 1372, 1374 (9th Cir. 1986); *Merriweather v. Sw. Research Inst.*, No. 2:09-CV-0328-JMS-WGH, 2010 WL 5139862, at *2 (S.D. Ind. Dec. 10, 2010). None of these cases deal with an attempt to enforce a guaranty, which, as explained, constitutes an independent "undertaking to answer for [the] principal's debts and obligations." *Bowyer v. Clark Equip. Co*., 357 N.E.2d 290, 293 (Ind. Ct. App. 1976).

As to the second and third arguments, these are so perfunctory as to be waived and warrant no further discussion. *See Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010). The Court only notes that there is relevant case law, cited to by INDYCAR, finding that guarantors can and have waived **even the**

In summary, Casey's interpretation of the Guaranty is contrary to Indiana law on unconditional guaranties, which does not require an action or judgment against the principal before bringing suit against the guarantor. Nor is Casey's ability to defend himself under the terms of the Guaranty impeded by Boston GP's absence. Casey has not demonstrated that the Court cannot accord complete relief under Rule 19(a)(1)(A).

### 2. Impairment of Nonparty's Interests

Second, the Court must look to whether, "as a practical matter," the suit may "impair or impede" the nonparty's ability to protect its own interests in the subject matter of the suit. Fed. R. Civ. P. 19(a)(1)(B)(i). On this point, Casey argues that a finding that Casey is liable on the Guaranty would determine Boston GP's contractual obligations without an opportunity to defend itself. INDYCAR in response argues that the Guaranty and Event Agreement permit INDYCAR to bring suit in Boston GP's absence.

The Seventh Circuit has explained that, "when a person is not a party to the [disputed] contract in litigation and has no rights or obligations under that contract, the absentee will not be regarded as an indispensable party in a suit to determine obligations under the disputed contract." *Davis Cos.*, 268 F.3d at 484. This is true even where a nonparty, as a result of an undertaking in a separate contract, could be "obligated to abide by the result of the pending action [on the disputed contract]." *Id.*; *see Estate of Eiteljorg ex rel. Eiteljorg v. Eiteljorg*, 813 F. Supp. 2d 1069, 1082 (S.D. Ind. 2011) (Barker, J.) (citing *Davis Cos.*, 268 F.3d at 484) (finding, where defendant sought dismissal under Rule 19, that the nonparty was not a required party merely

---

**possibility of arguing** that a principal is a required party under Rule 19(a), using language nearly identical to the language in the Guaranty in the instant case. *See, e.g.*, *Gen. Elec. Bus. Fin. Servs., Inc. v. Silverman*, No. 09C0364, 2009 WL 2371536 (N.D. Ill. July 30, 2009).

Finally, the analysis in this section applies with equal force to Casey's suggestion that Boston GP's performance may be excused by impossibility. [*See, e.g.*, Dkt. 50 at 5.]

because it "may be required at some point to transfer various items" to the plaintiff as a result of litigation).  Casey has not demonstrated that Boston GP has any rights or obligations under the Guaranty; the mere possibility that a determination on the merits could affect Boston GP's obligations under a wholly different contract is insufficient to satisfy Rule 19(a)(1)(B)(i), as explained in *Davis Companies* and *Eiteljorg*.

Most important, however, is the plain language of the Guaranty and Event Agreement, which demonstrates that the parties contemplated this very situation—wherein INDYCAR brings suit against Casey in Boston GP's absence.  Since Boston GP "prospectively agreed" to this situation, the Court cannot conclude that relief in this matter would impair Boston GP's ability to protect its interests.  *Kruse*, 815 N.E.2d at 150 ("[T]he guaranty and any other written agreements it incorporates must be construed together in order to determine the parties' intentions."); *cf. Gen. Elec. Bus. Fin. Servs., Inc. v. Silverman*, No. 09C0364, 2009 WL 2371536 (N.D. Ill. July 30, 2009) ("[T]he purpose of the guaranty [is] to provide . . . a simple means of compelling payment of the debt against the individual guarantors.").  Because Casey has not demonstrated that any of the Rule 19(a) criteria are satisfied in this case, the Court should conclude that Boston GP is not a required party and therefore should deny Casey's motion to dismiss.

### B. Rule 19(b)

Even if a Rule 19(a) criterion were satisfied in this case, Casey has not demonstrated that the Rule 19(b) factors weigh in favor of dismissal.  If joinder of a required party is not feasible, Rule 19(b) instructs the Court to "determine whether, in equity and good conscience," the case should be dismissed, considering factors such as possible prejudice to the parties or nonparties, the ability of the Court to fashion a remedy to limit any prejudice, the adequacy of a possible

judgment without the nonparty, and the adequacy of the plaintiff's remedy if the action were dismissed. Fed. R. Civ. P. 19(b).

Every single Rule 19(b) factor weighs against dismissal in this case. As explained above, neither the parties nor the nonparties will be unfairly prejudiced by a decision on the merits in this action "because all duties owed" under the Guaranty were "negotiated between the litigants" in this case. *Eiteljorg*, 813 F. Supp. 2d at 1083. Nor has Casey demonstrated that any judgment would be inadequate without Boston GP.

INDYCAR, however, would be entirely without a remedy if this action were dismissed. This is because accepting Casey's theory would, as another district court observed, "eviscerate the purpose of the guaranty." *Gen. Elec. Bus. Fin. Servs., Inc.*, 2009 WL 2371536, at *1. The purpose of a guaranty is to provide a liquid party for the creditor to pursue in the event that the principal debtor defaults. *See Kruse*, 815 N.E.2d at 142 n.2 ("An absolute guaranty is a guaranty whereby the guarantor agrees to answer for the debt of the debtor, notwithstanding the occurrence or nonoccurrence of any event either within or not within the contemplation of the parties at the time the guaranty is executed." (internal quotation omitted)). If Casey were correct that dismissal was required, then a guarantor could dismiss the case and avoid liability every time a debtor went bankrupt. The guarantor's obligation would be little more than illusory, and the creditor—who had bargained for the guaranty—would be left without a remedy.

Given the Indiana courts' persistent admonition to construe a guaranty to "give effect to the intentions of the parties" and recognition of broad waiver provisions in guaranties, *see, e.g.*, *id.*, the Court will not countenance Casey's repeated complaints of undue prejudice. In no fewer than three provisions does the Guaranty provide that INDYCAR is not required to join or otherwise sue Boston GP before pursuing Casey on the Guaranty. [Dkt. 35-2 at 1-2

("INDYCAR shall be under no obligation . . . to use diligence in: (i) preserving the liability of Promoter; or (ii) bringing suit to enforce . . . the Obligations.") ("The failure by INDYCAR to file or enforce a claim against . . . any other party shall not affect the liability of Guarantor . . . .") ("Specifically, INDYCAR shall not be required to pursue any other rights or remedies before invoking the benefits of this Guaranty.  Specifically, INDYCAR shall not be required to exhaust its rights and remedies against Promoter . . . . INDYCAR may maintain an action on this Guaranty regardless of whether: (a) Promoter is joined in such action . . . .").]  Casey's Guaranty "induc[ed] INDYCAR . . . to enter into the Event Agreement."  [Dkt. 34-1 at 7 (¶ 41).]  "Equity and good conscience" do not favor permitting Casey to circumvent his commitments under the Guaranty or to disavow these bargained-for provisions in this fashion.  The Court should find that the Rule 19(b) factors do not favor dismissal and deny Casey's Motion for this additional reason.

### C. Motion to Stay

Casey's alternative motion to stay is premised upon a determination that Boston GP is a required party.  As explained above, Boston GP is not such a party.  Moreover, the bankruptcy automatic stay provision under 11 U.S.C. § 362(a) "does not apply to guarantors."  *United States v. Wright*, 57 F.3d 561, 562 (7th Cir. 1995).[12]  The Court should therefore deny Casey's request to stay this case during the pendency of Boston GP's bankruptcy.

---

[12] The case upon which Casey relies states that "[t]here **may**, however, be an exception where the debtor is an indispensable party . . . ."  *In re James Wilson Assocs.*, 965 F.2d 160, 170 (7th Cir. 1992) (emphasis added).  Casey directs the Court to no authority actually holding that this exception exists, and, at any rate, Casey is not an "indispensable party."  *Wilson Associates* is relevant, however, with regard to Casey's bald and unsupported argument that the Court "should nonetheless stay this action under its own equitable authority," [Dkt. 50 at 10]; in that case, the Seventh Circuit observed that "a merely skeletal argument does not preserve an issue for review," *Wilson Assocs.*, 965 F.2d at 170.

## IV.  Conclusion

While the Boston Verizon IndyCar Series event may have been red flagged, Casey has not demonstrated that the same should happen to INDYCAR's lawsuit.  Accordingly, the Magistrate Judge recommends that Casey's motion to dismiss or stay this proceeding, [Dkt. 49], be **DENIED**.

Any objections to the Magistrate Judge's Report and Recommendation must be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  20 SEP 2016

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.