UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INDYCAR, LLC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-1274-TWP-MJD |
| | ) | |
| JOHN CASEY, | ) | |
| | ) | |
| Defendant. | ) | |

### ENTRY ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Plaintiff IndyCar LLC's ("IndyCar") Motion for Summary Judgment. (Filing No. 120.) Following the failure of a planned racing event, IndyCar instituted this action against *pro se* Defendant John Casey ("Casey"). As required by Local Rule 56-1, IndyCar filed a Notice regarding Casey's right to respond to and submit evidence in opposition to the motion for summary judgment (Filing No. 123). Casey did not file a response. For the reasons stated below, the Court **grants** IndyCar's Motion for Summary Judgment.

### I. BACKGROUND

The following material facts are not in dispute. Typically courts view the facts in the light most favorable to the non-moving party, "but when a party fails to respond to a motion for summary judgment, its failure 'constitutes an admission ... that there are no disputed issues of genuine fact warranting a trial.'" *Terrell v. Am. Drug Stores,* 65 F. App'x 76, 77 (7th Cir. 2003) (quoting *Flynn v. Sandahl,* 58 F.3d 283, 288 (7th Cir.1995).

In May 2015, IndyCar and non-party Boston Grand Prix ("Boston GP") entered into an agreement that Boston GP would promote an IndyCar race event in Boston, Massachusetts ("the Boston Race") for 2016 and through the year 2020 ("the Event Agreement"). (Filing No. 121 at 2.) Boston GP also had the right to market and sell tickets for the Boston Race, along with the

obligation to make necessary refunds and to fulfill any other responsibilities owed to consumers or third parties associated with ticket sales. *Id.* Boston GP had payment obligations to IndyCar, which were set forth in the Sanction Fee and Payment Sections of the Event Agreement. "The Sanction Fees for the 2016, 2017, 2018, 2019, and 2020 Events are $1,500,000, $1,600,000, $1,700,000, $1,800,000, and $1,900,000, respectively (each a "Sanction Fee")." (Filing No. 34-2 at 5.) The Event Agreement also stated that in the event the inaugural 2016 Boston Race was cancelled due to Boston GP's breach, Boston GP shall pay to IndyCar, as an early termination payment, the Sanction Fees for the 2016 and 2017 events. *Id.* at 4.

As a condition of entering into the Event Agreement with Boston GP, IndyCar required Casey to personally guarantee payment of the Sanction Fees for 2016 and 2017 (including revenue share)[1] ("the Guaranty"). (Filing No. 34-1.) In addition to the 2016 and 2017 Sanction Fees, the Guaranty also obligated Casey to pay all costs and expenses including reasonable attorney fees incurred by IndyCar in the enforcement or collection of the Event Agreement and Guaranty. *Id.* at 1. Ultimately, the Boston Race was cancelled after numerous issues from a soured and deteriorating relationship between Boston GP and the City of Boston. (Filing No. 59 at 2.)

As stated in IndyCar's Statement of Material Facts Not In Dispute and found by this Court on January 4, 2017, the terms of the Guaranty were absolute and unconditional, meaning that IndyCar was not required to pursue any rights or claims against Boston GP before invoking the benefits of the Guaranty. (Filing No. 77.) As such, IndyCar voluntarily dismissed Boston GP and Mark Perrone, manager of Boston GP, from this action in July 2016. (Filing No. 26.) The Guaranty

---

[1] The Event Agreement sets forth a revenue share arrangement that would become effective after baseline revenues were received for each applicable year. (Filing No. 34-2 at 5.) Because the inaugural 2016 Boston Race failed to take place as planned, these baseline revenues were not reached in order for the revenue arrangement in excess of the baseline revenues to take effect. Thus, the Court disregards the revenue share arrangement for purposes of IndyCar's Motion for Summary Judgment.

2

also required Casey to remain liable notwithstanding the dissolution of Boston GP, which is now engaged in bankruptcy proceedings. ([Filing No. 35-2 at 2](#).) After dismissing Boston GP, IndyCar filed its First Amended Complaint on August 10, 2016, for Casey's breach of the obligations contained in the Guaranty and the representations he made thereunder. ([Filing No. 34](#).) Casey's Guaranty was a condition upon which IndyCar entered into the Event Agreement with Boston GP.

The Guaranty contained a Representations Section which stated that Casey, the guarantor, had "no action or proceeding at law or in equity, or by or before any court or governmental instrumentality or agency, now pending against or, to the knowledge of Guarantor, threatened against the Guarantor that may materially and adversely affect the financial condition of Guarantor." ([Filing No. 35-2 at 2](#)). The Guaranty also stated that the balance sheets, earning statements, and other financial data that Casey furnished to IndyCar fairly represent the financial condition of Casey at the time given and were accurate, correct, and complete. *Id.*

IndyCar alleges that the balance sheets and other financial data that Casey produced in connection with the Guaranty contained material misrepresentations and significantly inflated his creditworthiness. IndyCar also alleges other misrepresentations in that Casey had pending litigation or threatened litigation which he did not disclose. These misrepresentations will be discussed in more detail in IndyCar's fraud claim.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the

3

record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

Local Rule 56-1(f) provides that the court will assume that "the facts as claimed and supported by admissible evidence by the movant are admitted without controversy to the extent that:" 1) the non-movant specifically controverts the facts with admissible evidence; 2) the movant's facts are not supported by admissible evidence; or 3) the facts alone or in conjunction with other admissible evidence, allow the court to draw reasonable inferences in the non-movant's favor sufficient to preclude summary judgment.

### III. DISCUSSION

IndyCar contends that Casey breached the Guaranty in two distinct ways. First, he breached by not fulfilling the obligations under the Guaranty and Event Agreement to pay the Sanction Fees owed when the Boston Race was cancelled due to Boston GP's breach. Second, Casey fraudulently induced IndyCar to enter into the Event Agreement and Guaranty by

4

misrepresenting his financial strength and ability to serve as a guarantor. The Court will discuss the breach of contract and fraud claim in turn.

**A.**     <u>**Breach of Contract Claim**</u>

"Summary judgment is particularly appropriate in cases involving written contracts." *Moriarty v. Svec,* 164 F.3d 323, 330 (7th Cir. 1998). Indiana courts interpret guaranties by the same rules applicable to other contracts. *Noble Roman's, Inc., v. Ward,* 760 N.E.2d 1132, 1137-38 (Ind.Ct.App. 2002). "Under Indiana law, a guaranty is an independent contract to assume liability for performance of a duty or payment of a debt if the primary obligor defaults in performance or payment." *McEntire v. Indiana Nat. Bank,* 471 N.E.2d 1216, 1223 (Ind. Ct. App. 1984) (citations omitted). To succeed on its breach of contract claim, IndyCar must prove (i) existence of a contract, (ii) breach of the contract, and (iii) damages. *Wilson v. Lincoln Federal Sav. Bank,* 790 N.E.2d 1042, 1048 (Ind. Ct. App. 2003).

The Magistrate Judge concluded (and this Court adopted) that the Guaranty was unconditional and absolute by the terms of the agreement. (Filing No. 77 at 3.) "An absolute guaranty is generally characterized by clear language indicating that the guaranty is 'absolute' or 'unconditional.'" (Filing No. 59 at 7) (citing *Kruse v. National Bank of Indianapolis,* 815 N.E.2d 137, 146 (Ind. Ct. App. 2004). "An absolute guaranty, unlike a conditional one, casts no duty upon the creditor or holder of the obligation to attempt collection from the principal debtor before looking to the guarantor." *Kruse,* 815 N.E.2d at 141 n.2.

The Guaranty's terms subjected Casey to independent, primary liability thereunder. "Guarantor absolutely and unconditionally guarantees the full and prompt payment and performance when due of the Obligations." (Filing No. 34-1 at 1.) Because the Waivers and Rights Sections of the Guaranty allowed IndyCar to release Boston GP and seek contractual

5

damages solely from Casey in the event of breach, the Magistrate Judge concluded this was precisely the type of liability contemplated by an absolute and unconditional guaranty under Indiana law. ([Filing No. 59 at 9](#).) As the Magistrate Judge's Report and Recommendation was previously adopted by this Court, the Court similarly finds that the Guaranty is an enforceable contract under Indiana law and Casey's responsibilities and debt repayment obligations are unconditional and absolute.

It is undisputed that the Guaranty's terms required Casey to pay the 2016 and 2017 Sanction Fees upon demand.

> Guarantor absolutely and unconditionally covenants and agrees that, if (a) Promoter defaults for any reason in the payment or performance of all or any part of the Obligations; and (b) INDYCAR exercises any of its rights or remedies under the Agreement; then Guarantor shall pay, upon demand, such amounts as may be due to INDYCAR as a result of the default by Promoter and the exercise by INDYCAR of its rights or remedies, without further notice of default.

([Filing No. 34-1 at 2](#).) Casey's obligations under the Guaranty became due when the Boston Race event was cancelled. Casey breached the Guaranty when he refused to pay the 2016 and 2017 Sanction Fees owed thereunder as a result of the cancellation of the Boston Race. Furthermore, IndyCar was damaged as a result of the breach of the failure to pay, including fees and costs associated in connection with litigating this case and collecting payments under the Guaranty. IndyCar alleges that it has incurred over $338,028.87 in expenses and attorney fees as of September 7, 2017, in addressing Casey's breach and ongoing non-compliance with discovery in this matter.

The evidence in the record shows that Casey executed an unconditional and absolute Guaranty to guarantee payment for the 2016 and 2017 Sanction Fees in the event of Boston GP's breach. Because the Boston Race was cancelled due to a relationship gone wrong between Boston GP and the City of Boston, Boston GP breached due to non-performance. At that time, Casey's

obligations under the Guaranty became due and his failure to compensate IndyCar resulted in his breach of his obligations thereunder. IndyCar has suffered damages as a result of Casey's breach. Casey's failure to respond to IndyCar's Motion for Summary Judgment deems IndyCar's recitation of the facts as admitted and undisputed. Therefore, IndyCar's Motion for Summary Judgment on its breach of contract claim is **granted**. ([Filing No. 120](#).)

B. <u>**Fraudulent Misrepresentations in Guaranty**</u>

IndyCar argues that Casey fraudulently misrepresented his ability to serve as a guarantor, in connection with the Event Agreement, to induce IndyCar to enter into the Guaranty. To succeed on a fraudulent misrepresentation claim, a plaintiff must prove: "(i) material misrepresentation of past or existing facts by the party to be charged, (ii) which was false, (iii) which was made with knowledge or reckless ignorance of the falseness, (iv) was relied upon by the complaining party, and (v) proximately caused the complaining party injury." *Johnson v. Wysocki,* 990 N.E.2d 456, 460–61 (Ind. 2013) (citations omitted). IndyCar's fraudulent misrepresentations claims are that Casey misrepresented that there was no litigation pending or threatened against him, he inflated valuations of various properties and incorrectly listed himself as titled owner of property that he did not own.

1. <u>**Material, False Misrepresentations of Existing Facts**</u>

"In Indiana, an action for fraud must relate to a present or pre-existing fact." *Murphy v. Mellon Accountants Prof'l Corp.,* 538 N.E.2d 968, 970 (Ind. Ct. App. 1989). "[T]he general rule in Indiana is that if a statement is "susceptible of exact knowledge" when made, it is a statement of fact rather than opinion. *Prime Eagle Grp. Ltd. v. Steel Dynamics, Inc.,* No. 1:08 CV 35, 2009 WL 449173, at *3 (N.D. Ind. Feb. 23, 2009) (citation omitted).

IndyCar argues that Casey's false representation that there were no lawsuits pending or threatened against him was a fact susceptible of exact determination at the time of his execution of the Guaranty.[2] IndyCar also argues Casey's financial statement inflated his total assets by incorrectly stating market values, mortgage amounts, and falsely representing that he owned the title to certain property. These were also representations susceptible of exact determination when made by reference to the appropriate public records and/or bank statements.

As mentioned previously, IndyCar contends there were three lawsuits either pending or threatened that Casey failed to disclose. Casey made the representations at issue in the Guaranty on May 8, 2015. At that time, two lawsuits were pending. *North Shore Bank v. John F. Casey, et al* (the "Massachusetts Lawsuit") was filed on March 26, 2015, for Casey's alleged failure to pay on a promissory note relating to his purchase of the Pro Skills Hockey Rink (the "Hockey Rink"). ([Filing No. 122-15](#).) Another lawsuit regarding the Hockey Rink's ownership (the "Hockey Rink Lawsuit") was filed by Casey on September 11, 2014, against Pro Skills Hockey Arena, Inc. ([Filing No. 122-18](#)). On October 16, 2014, the defendants in that case filed counterclaims against Casey alleging that he failed to make payments under the sales contract. A third lawsuit was filed against Casey on December 16, 2015, by Omni Leasing Corporation (the "Colorado Lawsuit"), for an alleged breach of a leasing agreement due to Casey's failure to make payments. ([Filing No. 122-19](#).)

The relevant date for analyzing Casey's representations is May 8, 2015, the date he executed the Guaranty. Thus, the Colorado Lawsuit, filed on December 16, 2015, was not a pre-

---

[2] IndyCar requests this Court to take judicial notice of all pleadings and orders in the three lawsuits as authorized under Rule 201 of Federal Rules of Evidence. For purposes of this Order, the Court will take judicial notice of the dates that the three lawsuits were filed and subject matter thereof as relevant to the representation Casey made regarding no pending or threatened litigation against him. The Court does not take judicial notice of the facts contained in the pleadings and orders of any of the three lawsuits outside of the dates, parties, and overarching subject matters.

existing fact as of May 8, 2015. IndyCar argues that Casey was presumably put on notice of the potential for a lawsuit by Omni's demands for payments as evidenced by the counts of the Colorado Lawsuit Complaint; however, the complaint does not mention the dates that Casey stopped paying or when those demands were made to show sufficiently that Casey was aware of threatened litigation. Casey's failure to disclose the Colorado Lawsuit does not amount to a misrepresentation because that case was not filed until after he signed the Guaranty and based on the evidence produced, the Court cannot determine at what time he became aware that the lawsuit was threatened. Nevertheless, both the Massachusetts Lawsuit and Hockey Rink Lawsuit were filed before Casey executed the Guaranty. Casey's failure to disclose these two lawsuits was a false and material misrepresentation.

In addition, Casey misrepresented the value of his total assets and liabilities, and his ownership of real estate. In his Statement of Financial Condition, Casey valued his assets, including the Hockey Rink, at $38,624,804.00 and liabilities at $1,510,000.00, amounting to a $37,114,804.00 net worth. ([Filing No. 121 at 6](Filing No. 121 at 6).) In arriving at his net worth, Casey inflated and misrepresented the value of the real estate that he owned. The following is an itemization of real estate Casey disclosed in connection with the Guaranty:

| Address & Type of Property | Title in Name Of | Date Acquired | Cost | Market Value | Mortgage Maturity | Mortgage Amount |
|---|---|---|---|---|---|---|
| 22 HOOD FARM | JOHN | 12/10 | 4,000,000 | 3,000,000 | | 1,100,000 |
| 24-66 HOOD FARM LAND | JOHN | 12/07 | 4,700,000 | 6,000,000 | | |
| 103 SUMMIT AVE | JOHN | 2/12 | 125,000 | 450,000 | | 110,000 |
| 36 ELLERY ST | JOHN | 12/04 | 1,700,000 | 2,500,000 | | 250,000 |

SCHEDULE D – REAL ESTATE OWNED

IndyCar argues that the "22 Hood Farm" was deeded solely to Gayle Casey, Casey's wife, and he does not have any titled ownership to the property. Although the difference in the overall mortgage total is not extreme—Casey reported a $1,100,000.00 mortgage when it was in fact $1,215,000.00—the misrepresentation is still material. In addition, the market value of the 22

9

Hood Farm was materially inflated and misrepresented, in that Casey listed the market value as $3,000,000.00 when the appraised land and improvements totaled $1,231,000.00. This assessment consisted of two parcels of land in two different towns: Boxford and Ipswich, Massachusetts. ([Filing No. 122-8 at 31](#).) The Boxford Assessor appraised the Boxford parcel of land at $1,212,300.00 and the Ipswich Assessor appraised the Ipswich parcel of land at $18,700.00 in arriving at the $1,231,000.00 total. *Id.* at 32-35. Casey's representation that the market value of 22 Hood Farm was worth $3,000,000.00 was a material, false representation.

Next, IndyCar alleges that the "36 Ellery St." property belongs to John P. Casey (believed to be Casey's father) and Catherine M. Casey, as Trustees of 36 Ellery Street Nominee Trust. The Trust is recorded at the Massachusetts Registry of Deeds, but does not list the beneficiaries. ([Filing No. 121 at 8](#).) The property's 2016 assessed value was $1,107,800.00, but Casey reported $2,500,000.00 on his Statement of Financial Condition. ([Filing No. 122-9 at 3](#).) At a minimum, the inflated valuation was a material, false representation.

Casey's company, Casey Summit, LLC, owns one unit of a three-family residence at "103 Summit Ave". In October 2012, the property was purchased for $85,000.00, not $125,000.00 as reported by Casey. ([Filing No. 122-10 at 1](#).) A mortgage was taken against the property on July 10, 2013, for $116,250.00 ([Filing No. 122-11 at 1](#)), and a second mortgage was taken against the property on October 6, 2014, for $175,000.00 ([Filing No. 122-20 at 20](#)). Thus, the total mortgage on the property was approximately $291,250.00, but Casey reported it as $110,000.00. Furthermore, the 2016 assessed value was $237,200.00, but Casey represented the market value as $450,000.00. For this property, Casey underreported the mortgage amount, and inflated the purchase price and market value.

Lastly, IndyCar's search did not return records in the state assessor's offices or the Registry of Deeds for the "24-66 Hood Farm Land" claimed by Casey, and Casey has not put forth any evidence to dispute this fact. Casey reported that the market value for this property was $6,000,000.00 and the cost was $4,700,000.00. Casey's failure to respond to IndyCar's Motion for Summary Judgment is deemed an admission that the property is nonexistent. Thus, the value is zero and the reporting of this property was also a material, false representation.

Based on the foregoing, Casey falsely represented numerous material existing facts when he inaccurately disclosed ownership titles, market values, mortgage amounts, and purchase costs of the various properties. This failure to produce an accurate financial statement materially misrepresented the overall value of his assets and the amount of his liabilities. IndyCar did not have the benefit of assessing an accurate and complete financial statement in evaluating Casey's ability to serve as a guarantor.

**2.** **Misrepresentations made with knowledge or reckless ignorance of their falseness**

"[T]he element of actual knowledge can be inferred or "may be proven by circumstantial evidence notwithstanding the absence of a plaintiff's admission of such knowledge." *Johnson v. Wysocki,* 990 N.E.2d 456, 466 (Ind. 2013). Although Casey's failure to respond to IndyCar's Motion for Summary Judgment is deemed an admission of the facts, the circumstantial evidence also reveals that Casey had actual knowledge that his representations were false. At a minimum, the false market valuations and mortgage amounts of the various real estate properties were readily ascertainable from bank statements and property tax records. Furthermore, the purchase costs and titles of ownership is information that Casey could have accurately reported. As of the date that Casey executed the Guaranty, he would have been aware of at least two pending lawsuits. One of those lawsuits involved counterclaims against him for breach of contract on his purchase of the

Hockey Rink, which made its inclusion on the Statement of Financial Condition reckless, if not fraudulent. Even if Casey was the true owner of the Hockey Rink at the time he made the representation, he fraudulently inflated and misrepresented the value. Thus, the Court determines that Casey's misrepresentations were made with knowledge or reckless ignorance of their falseness.

### 3. IndyCar's detrimental reliance and damages

Although deception and reliance are generally questions for the trier of fact, Casey has not put forth evidence that the facts are in dispute. *Carrell v. Ellingwood,* 423 N.E.2d 630, 635 (Ind. Ct. App. 1981). "One relying upon a representation is bound to exercise ordinary care and diligence to guard against fraud. However, the requirement of reasonable prudence in business transactions is not extended so as to permit an intentional fraud perpetrated on the unwary." *Id.* Further, "a false and fraudulent representation may be relied upon by a person having no actual knowledge, even though the fact in question is a matter of public record." *Id.*

IndyCar relied on Casey's production of proof of his financial and legal affairs to be accurate and truthful documents. IndyCar asserts that Casey was generally regarded as a successful and wealthy businessman with an impressive resume and connections. ([Filing No. 121 at 29](Filing No. 121 at 29).) Although some of the false representations regarding the properties' market values could have been ascertained by resorting to public records, IndyCar nevertheless detrimentally relied on the representations that Casey made and asserts that it had no actual knowledge that Casey made fraudulent representations. Casey's representations led IndyCar to believe that Casey was a creditworthy guarantor and argue that they were induced by Casey's false representations to enter into the Event Agreement and Guaranty. IndyCar argues it was damaged by the fraudulent representations and incurred reputational harm in the media due to the cancelled race and

associated investigation by the Massachusetts Attorney General which required IndyCar to issue refunds, fees, and costs to the fans who had purchased tickets. *Id.* at 30. In addition, IndyCar was forced to find an alternative venue for the race which was ultimately held in Watkins Glen, New York. ([Filing No. 122-1 at 5-6](#).) These damages are distinct from the damages under IndyCar's breach of contract claim and are based in tort. Because IndyCar detrimentally relied on, and was damaged as a result of Casey's fraudulent misrepresentations that he knew were false at the time he made them, summary judgment is appropriate on IndyCar's fraud claim.

## IV. CONCLUSION

For the foregoing reasons, the Court determines that, based on the undisputed material facts, IndyCar is entitled to summary judgment as a matter of law. Accordingly, IndyCar's Motion for Summary Judgment ([Filing No. 120](#)) is **GRANTED** on its breach of contract and fraud claims.

The Court will set this matter for a damages hearing in a separate entry.

**SO ORDERED.**

Date: 12/20/2017

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

John Casey
22 Hood Farm Road
Ipswich, Massachusetts 01938

Elizabeth N. Johnson Timme
ICE MILLER LLP
elizabeth.timme@icemiller.com

Olga A. Voinarevich
ICE MILLER LLP
olga.voinarevich@icemiller.com

Angela Pease Krahulik
ICE MILLER LLP
krahulik@icemiller.com

Pamela E. Berman
BOWDITCH & DEWEY, LLP
pberman@bowditch.com